# IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **IN RE:**<br><br>Elleni Berger and Randy Berger,<br>    **Debtors,**<br>Commonwealth of Pennsylvania,<br>Department of Revenue,<br>    **Appellant,**<br>    vs.<br>Elleni Berger and Randy Berger,<br>    **Appellees.** | ) **Civil Action** 2:19-cv-00417<br>) *Appeal From:*<br>) **Bankruptcy No.** 18-20778-GLT<br>) **Chapter** 13<br>) **Adv. No.** 18-02130-GLT<br>)<br>)<br>)<br>)<br>)<br>) |

## OPINION

Pending before the court is an appeal of the bankruptcy court's order of March 29, 2019, filed by the Commonwealth of Pennsylvania Department of Revenue (the "State"), with brief in support (ECF Nos. 1,2). Appellees Elleni and Randy Berger (the "Bergers") filed a brief in opposition and the State filed a reply brief (ECF Nos. 7, 11). The court also considered the amicus brief filed by Ronda Winnecour, Chapter 13 Standing Trustee for the Western District of Pennsylvania ("Trustee") (ECF No. 9). The appeal is ripe for disposition.

Factual and Procedural Background

The facts are not in dispute. The Bergers filed a voluntary Chapter 13 petition on March 1, 2018, and subsequently proposed a payment plan. The Bergers own a residence and some rental property in Allegheny County, Pennsylvania. In Schedule A, the Bergers valued the residence at $390,000.00 and the rental property at $175,000.00.

The State filed a proof of claim for unpaid personal income taxes totaling $11,050.82. Because four liens had been entered and docketed in Allegheny County, the State asserted that its

claims were secured within the meaning of 11 U.S.C. § 506(a)(1), in the amount of $10,824.43. The federal government ("IRS") also filed a proof of claim for unpaid federal personal income taxes totaling $526,068.96. The IRS asserted that its claim was secured in the amount of $13,141.00.

The properties were encumbered by mortgages. The residence was subject to a first mortgage with a face amount of $443,000 and a payoff amount of $488,805. The rental property was subject to a first mortgage with a face amount of $176,000 and a payoff amount of $197,063.84. Because the outstanding mortgages exceeded the market value of the properties, the Bergers valued the State's secured claim at $0.00.

The Bergers commenced an adversary action to strip the tax liens from the properties. The State filed a partial motion to dismiss, contending that it was entitled to immunity under the Eleventh Amendment to the United States Constitution. On March 29, 2019, the bankruptcy court issued a 20-page opinion and order denying the State's motion. This appeal followed.

Legal Analysis

The parties agree that this court may properly exercise jurisdiction over the appeal. Although denials of motions to dismiss are not ordinarily appealable, the United States Supreme Court held in *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc*., 506 U.S. 139, 147 (1993), that state entities may take advantage of the collateral order doctrine to immediately appeal an order denying a claim of Eleventh Amendment immunity.

The State presents the following issues on appeal: (1) whether a debtor's adversary action seeking to strip tax liens constitutes a "suit against the State" for purposes of the Eleventh Amendment; (2) whether the State waived its immunity by filing a proof of claim in the Bergers'

Chapter 13 case; and (3) whether Congress abrogated the State's immunity through the enactment of 11 U.S.C. § 106(a)(1). The parties agree that each issue presents a pure question of law which is subject to plenary review.

The bankruptcy court denied the State's motion to dismiss the Bergers' adversary proceeding for three separate reasons. It held that the State waived any claim of sovereign immunity pursuant to 11 U.S.C. § 106(b) by filing a proof of claim in the Bergers' Chapter 13 case.[1] The bankruptcy court explained that the State's proof of claim and the Bergers' adversary proceeding were devices by which both parties sought to declare their rights to the same underlying property of the estate. The bankruptcy court noted that it was bound by *International Finance Corp. v. Kaiser Group International, Inc.*, 399 F.3d 558, 569 (3d Cir. 2005), to liberally construe whether the claims arose out of the same transaction or occurrence.

The bankruptcy court held, in the alternative, that the State's immunity had been abrogated by Congress. The bankruptcy court rejected the State's reliance on *Ryan v. United States*, 725 F.3d 623 (7th Cir. 2013) (holding that *Dewsnup v. Timm*, 502 U.S. 410 (1992) applied equally in the Chapter 7 and Chapter 13 contexts), because that decision involved § 502(d), while under Third Circuit Court of Appeals' decisions, lien stripping is accomplished by a

---

[1] 11 U.S.C. § 106(b) provides: "A governmental unit that has filed a proof of claim in the case is deemed to have waived sovereign immunity with respect to a claim against such governmental unit that is property of the estate and that arose out of the same transaction or occurrence out of which the claim of such governmental unit arose."

3

combination of § 506(a) [2] and § 1322(b)(2).[3] (ECF No. 3-6 at 16-18) (citing *McDonald v. Master Financial, Inc. (In re McDonald)*, 205 F.3d 606 (3d Cir. 2000)). The bankruptcy court reasoned that although § 106(a) does not enumerate § 1322 in the list of provisions abrogating sovereign immunity, the lack of specific reference to § 1322 was irrelevant because § 1327[4] (which is enumerated in § 106)[5] is the enabling provision that makes the terms of a confirmed plan binding on creditors. *Id*.

Finally, the bankruptcy court concluded that because the nature of the lien stripping remedy was an *in rem* proceeding, the State never had sovereign immunity to invoke. As explained in *Central Virginia Community College v. Katz*, 546 U.S. 356 (2006) (holding that an adversary proceeding to set aside preferential transfers was not barred by sovereign immunity),

---

[2] 11 U.S.C. § 506(a)(1) provides:

> (a)(1) An allowed claim of a creditor secured by a lien on property in which the estate has an interest, or that is subject to setoff under section 553 of this title, is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property, or to the extent of the amount subject to setoff, as the case may be, and is an unsecured claim to the extent that the value of such creditor's interest or the amount so subject to setoff is less than the amount of such allowed claim. Such value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest.

[3] 11 U.S.C. § 1322(b)(2) provides: "(b) Subject to subsections (a) and (c) of this section, the plan may— . . . . (2) modify the rights of holders of secured claims, other than a claim secured only by a security interest in real property that is the debtor's principal residence, or of holders of unsecured claims, or leave unaffected the rights of holders of any class of claims."

[4] 11 U.S.C. § 1327(a) provides: "(a) The provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan."

[5] 11 U.S.C. § 106(a) provides: "Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following: . . . [§] 506, . . . 1327. . . ."

4

"[i]n ratifying the Bankruptcy Clause[6] [at the Constitutional Convention in 1787], the States acquiesced in a subordination of whatever sovereign immunity they might otherwise have asserted in proceedings necessary to effectuate the *in rem* jurisdiction of the bankruptcy courts." *Id*. at 378. Even if a proceeding is "merely ancillary to the Bankruptcy Court's exercise of its *in rem* jurisdiction," it does not implicate state sovereign immunity. *Id.* at 371 (citing *Tennessee Student Asst. Corp. v. Hood*, 541 U.S. 440 (2004) (a proceeding to discharge student loan was ancillary to bankruptcy court's *in rem* jurisdiction and did not implicate state sovereign immunity)). The bankruptcy court explained that "[l]ien stripping is nothing more than a determination of the rights in a debtor's *res*, in exactly the same way as the discharge of student loan debt in *Hood* and the avoidance of a preferential transfer in *Katz*." (ECF No. 3-6 at 20). The bankruptcy court characterized the assessment and modification of liens against estate assets as "the quintessential *in rem* proceeding." *Id*. The bankruptcy court rejected the State's attempt to characterize the removal of its liens as an affirmative act and as an *in personam* proceeding. The bankruptcy court concluded: "determining rights in a piece of property is properly an *in rem* proceeding," and the State, therefore, has no sovereign immunity to assert. *Id*.

The Trustee, as amicus, urges affirmance of the bankruptcy court's decision because it is: (1) correctly decided; and (2) consonant with the policy objectives of helping debtors achieve fresh starts and the equal treatment of creditors. This court agrees with the Bergers that the State cannot assert sovereign immunity in these circumstances. Because the bankruptcy court's analysis about the *in rem* nature of the proceeding logically comes first, is persuasive, and is dispositive, the court need not address its alternative rationales. If the State's sovereign

---

[6] Article I, § 8 of the United States Constitution provides, in relevant part: "The Congress shall have Power To...establish...uniform Laws on the subject of Bankruptcies throughout the United States...."

immunity is not implicated, the court need not decide whether Congress abrogated it or the State waived it. In *Hood*, the Supreme Court granted certiorari to determine whether the Bankruptcy Clause of the United States Constitution granted Congress the authority to abrogate state sovereign immunity from private suits. Because the Supreme Court concluded "that a proceeding initiated by a debtor to determine the dischargeability of a student loan debt is not a suit against the State for purposes of the Eleventh Amendment," it did not reach the question on which certiorari was granted. 541 U.S. at 443.

As explained in *Katz*, bankruptcy jurisdiction is principally *in rem* jurisdiction. 546 U.S. at 369. The bankruptcy court's jurisdiction is premised on the debtor and his estate, not on the creditors. *Id*. at 370 (citing *Hood*, 541 U.S. at 447) (bankruptcy court can provide the debtor a fresh start even if all the creditors do not participate because its *in rem* jurisdiction empowers it to determine all claims that anyone may have to the property or thing in question). The exercise of the bankruptcy court's jurisdiction, therefore, "does not, in the usual case, interfere with state sovereignty even when States' interests are affected." *Id*. The Supreme Court explained that state sovereign immunity is not implicated by proceedings that are "ancillary to" the bankruptcy court's *in rem* jurisdiction, even when they arguably could be characterized as a suit against the state:

> Our decision in *Hood* illustrates the point. As the dissenters in that case pointed out, it was at least arguable that the particular procedure that the debtor pursued to establish dischargeability of her student loan could have been characterized as a suit against the State rather than a purely *in rem* proceeding. *See* 541 U.S. at 455–456, 124 S. Ct. 1905 (THOMAS, J., dissenting). But because the proceeding was merely ancillary to the Bankruptcy Court's exercise of its *in rem* jurisdiction, we held that it did not implicate state sovereign immunity.

*Id*. at 371. In *Hood*, the Supreme Court commented that a bankruptcy court "had the authority to sell a debtor's property 'free and clear' of a State's tax lien." 541 U.S. at 448. The exercise of

the bankruptcy court's *in rem* jurisdiction to discharge a debt does not infringe state sovereignty. *Id.* Recently, in *Matter of Sherwin Alumina Co., L.L.C.*, 932 F.3d 404 (5th Cir. 2019), the Fifth Circuit Court of Appeals held that a bankruptcy proceeding to remove an easement was *in rem* and "does not implicate, let alone violate, the Eleventh Amendment." *Id*. at 408–09 (citing *Hood*).

The State's attempts to distinguish *Hood* and *Katz* in this case (ECF No. 11 at 3-7) echo the arguments made by the dissent in *Katz*, and are therefore not persuasive. *See id*. at 379-393 (Thomas, dissenting) (characterizing the relief sought, i.e., recovery of preferential transfers for the debtor's estate, as an affirmative action for monetary relief to which sovereign immunity applied and contending that an additional statutory intent to waive immunity was necessary). The majority in *Katz* rejected these contentions and concluded that an additional statutory abrogation of immunity was unnecessary because the relevant abrogation was effectuated in the adoption of the United States Constitution. *Id*. at 379.

Lien stripping falls within the bankruptcy court's *in rem* jurisdiction. As the Trustee points out, lien stripping does not result in recovery of monetary damages or any other affirmative relief against the State. (ECF No. 9 at 6). In *In re Kressler*, 40 F. App'x 712, 713 (3d Cir. 2002), the Third Circuit Court of Appeals recognized "the long-standing rule in bankruptcy that a lien is a property interest-an *in rem* claim rather than an *in personam* claim." In *Hammond v. Allegheny County Treasurer (In re Hammond)*, 420 B.R. 633, 636-37 (Bankr. W.D. Pa. 2009), the court explained that because of the *in rem* nature of a lien stripping action, § 506 was an appropriate vehicle by which a debtor could determine which claims must be paid through a Chapter 13 plan. The Bergers' adversary action to determine the State's rights in their estate based on its tax lien was analogous to the discharge of student loan debt in *Hood* and the

7

avoidance of a preferential transfer in *Katz,* which the Supreme Court held did not trigger sovereign immunity.

In sum, because determining whether the State had a tax lien on the Bergers' property was an *in rem* proceeding, the State had no sovereign immunity to raise under the circumstances of this case. The State's motion to dismiss the adversary action for lack of jurisdiction was properly denied by the bankruptcy court.

Conclusion

For the reasons set forth above, the March 29, 2019 decision of the bankruptcy court will be AFFIRMED.

An appropriate order follows.

October 21, 2019  /s/ Joy Flowers Conti
　　　　　　　　　　　　　　　　　　　Joy Flowers Conti
　　　　　　　　　　　　　　　　　　　Senior United States District Judge